UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| NIBCO INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  NO. 3:02-CV-124 PPS |
| | ) |
| TYCO INTERNATIONAL (U.S.), INC., | ) |
| TYCO VALVES & CONTROLS, INC., | ) |
| TYCO VALVES & CONTROLS, L.P., | ) |
| and TV&C GP HOLDING, INC., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court is a motion by NIBCO, Inc. to reconsider our claim construction order in light of a new opinion from the Federal Circuit, *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). *Phillips* clarified the ruling in *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), which had elevated the role of dictionaries in the claim construction process. In the present case, the Court did rely on *Texas Digital* in formulating its claim construction opinion. However, *Phillips* does not change any of the conclusions that the Court came to in its claim construction opinion. Thus, NIBCO's Motion for Reconsideration is DENIED.

*Phillips* clarified the appropriate weight to be assigned the various sources that inform the claim construction process. Specifically, the Federal Circuit made clear that intrinsic evidence, including the patent specification and prosecution history, is more reliable than extrinsic evidence, including dictionaries, in determining how to read claim terms. *Id.* at 1318. Thus, *Phillips* reduced (although did not eliminate) the role that dictionaries play in the claim

construction process and put the primary emphasis in the process back on the ordinary and customary meaning of the words used in the claim, the specifications and the prosecution history.

*Phillips* started with the basic proposition, established nearly two centuries ago, that the language of the claims of a patent define what the invention is. *Phillips*, 415 F.3d at 1312. It is for this reason that "the claims in the patent are the sole measure of the grant." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339, 81 S.Ct. 599 (1961). Thus, it is the language of the claims that delineates how a patentee can exclude others. *Phillips*, 415 F.3d at 1312.

*Phillips* requires courts to give claim terms their ordinary and customary meaning and such meaning must be determined from the standpoint of a person of ordinary skill in the relevant art. *Phillips*, 415 F.3d at 1313. Consistent with this approach, we stated in our claim construction ruling that "[c]laim construction analysis begins with the words of the claim." Claim Construction Order, July 12, 2004 at 6 (citing *Teleflex v. Ficosa North American Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002)). Thus, in the absence of an express intent to impart a novel meaning to claim terms, we noted, consistent with *Phillips*, that there is a "heavy presumption" that a claim term carries its ordinary and customary meaning. *Id.* (citing *Teleflex*, 299 F.3d at 1325). We further stated that "[i]n all cases, the ordinary meaning must be determined from the standpoint of a person of ordinary skill in the relevant art." *Id.*

In ascertaining how a person of ordinary skill in the art would read claim language, *Phillips* counsels not just to read the claim in isolation, but also "in the context of the entire patent including the specifications." *Phillips*, 415 F.3d at 1313. *Phillips* went on to note,

however, that sometimes claim language is so clear, even to lay judges, that "claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. In those types of cases, general purpose dictionaries may be helpful in defining claim terms. *Id.*

By contrast, in cases where the claim terms are technical in nature, general purpose dictionaries are not much help because the inquiry involves an "examination of terms that have a particular meaning in a field of art." *Id.* In these types of cases, courts should look to "the words of the claims themselves, the remainder of the specifications, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water v. Safari*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). Moreover, consulting with the specifications will sometimes reveal that the patentee gave a claim term a unique definition, the so-called patentee as his own lexicographer. *Phillips*, 415 F.3d at 1316. In such cases, the patentee's definition must govern. *Id.*

In sum, the specifications, according to *Phillips*, are highly relevant – and often dispositive – of the claim construction process. *Id.* at 1415. This is because the specifications are the best guide as to what the patentee is describing in the claim language. *Id.* Thus, when there is doubt or ambiguity in the claim language, it is proper to "refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878).

NIBCO specifically raises two parts of the Court's claim construction opinion that it believes are changed by *Phillips*, our interpretation of "valve disc replica" and our interpretation

of "valve stem replica."  We will address each in turn.

## A.  Valve Disc Replica

Our claim construction opinion interpreted "valve disc replica" as "a close copy of the valve disc."  Claim Construction Order, July 12, 2004 at 8-9.  Nothing in *Phillips* changes that conclusion.  NIBCO seeks to have the Court define the term almost purely based on the function that it plays in the '347 patent.  NIBCO wants a valve disc replica to be construed as "a structure or assembly of structures that create [sic] a circular disc with an outer periphery shaped to form the valve seat during molding and having aligned valve stem receiving openings on one of its faces."[1]  NIBCO's Motion for Reconsideration at 8.  But the functions inherent in this definition, and the functions described in the specification, are consistent with a valve disc replica being "a close copy of the valve disc."

Although we did refer to a dictionary in arriving at our claim construction for valve disc replica, nothing in *Phillips* prevents us from doing so.  As mentioned above, the *Phillips* court noted that "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claims construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. . . .  In such circumstances, general purpose dictionaries may be helpful."  *Phillips*, 415 F.3d at 1314.  The Court believes that to be the case here.  It is for this reason that

---

[1] As we mentioned in our claim construction order, NIBCO first suggested that we construe the phrase "valve disc replica" to mean "a structure or combination of structures that shapes the central portion or valve seat during the molding process and thus simulates the finished fluid passageway within which the valve disc will be mounted when the valve is assembled."  In its Supplemental Brief, NIBCO changed its position of the meaning of "valve disc replica" to the proposed definition quoted above.  Claim Construction Order at 8.

we stated in our claim construction order that "referencing dictionaries is probably not even necessary in this instance, since common usage of the term" valve disc replica is plain on its face.  *See* Claim Construction Order at 9.

We continue to believe that the ordinary and customary meaning of the term "replica" as understood by someone skilled in the art would be a "close copy," and therefore a "valve disc replica" is a "close copy of a valve disc."  NIBCO has presented us with no evidence that someone of skill in the art of making valves would view this term differently.  NIBCO instead argues that it never said or suggested in the specifications that the valve disc replica "looks like" or is a "close copy" of the actual valve disc.  NIBCO's Motion for Reconsideration at 7-8.  But this argument ignores the obvious point that by repeatedly using the term "replica" in the claims, nothing more needed to be said because a replica *is* a close copy.

Moreover, the intrinsic record supports the construction given by the Court.  The figures depicting the valve disc replica show an object that is very similar in appearance to the valve disc, although it is not an exact copy of the valve disc.  *Compare* Figs. 1 and 3 *with* Figs. 11 and 12.  For example, both the valve disc and the valve disc replica are thin circular plates.  *Id.*  In addition, both the disc and the disc replica contain holes through which the valve stem (or valve stem replica, respectively) is inserted.  *Id.*  Although there are some variations between the valve disc replica and the valve disc – for example, the replica has inclined walls making it recessed on one of its faces so it can be held in place during the molding process, *see* '347 Patent, col. 4 lines 10-13 – this merely confirms the point that the disc replica is a close copy of the disc, not an *exact* copy of the disc.

The prosecution history of the '347 patent further supports the construction that a "valve

disc replica" is a close copy, not an exact copy, of a valve disc. During the prosecution of the '347 patent, the applicants stated that the valve disc replica would not be an exact copy of the valve disc because there would be "dimensional variations" between the two to optimize the configuration of the final valve. As the applicants stated: "the replica valve disc and the replica valve stem are not exact duplicates of the corresponding finished valve disc and valve stem. Their dimensional variations permit the formation of a channel 46 and thickened bosses 59 and 59a." Tyco's Summary Judgment Exhibit B-15 at 2. The prosecution history thus supports the construction that, although the disc replica is not an *exact* copy of the valve disc, it is a close copy of it.

Furthermore, nothing in the specifications indicates that NIBCO acted as its own lexicographer as to the term "replica," or that it used the term idiosyncratically. *See Phillips*, 415 F.3d at 1316. NIBCO draws the Court's attention to lines 7-14 of column 4 of the '347 patent, which reads as follows:

> The central or valve seating portion of the seat is shaped by a disc replica 43 which is seated in the fluid passageway and is clamped between the mold halves 40a and 40b (FIG. 10). The disc replica 43 is recessed in one face (FIG. 16) creating a cavity 44 into which a mating boss 45 on mold half 40b seats to hold the valve replica properly located within the valve body 11 (FIGS. 10 and 12). The cavity and boss have inclined walls to accurately center the replica.

*See* NIBCO's Motion for Reconsideration at 7. This part of the specification, which indicates that the function of the valve disc replica is to shape the valve seat and to simulate the valve disc replica, is compatible with the ordinary meaning of the term "valve disc replica," that is, "a close copy of a valve disc." In the Court's view, nothing in this passage suggests that the patentee intended to define the term "valve disc replica" as "a structure or assembly of structures that create [sic] a circular disc with an outer periphery shaped to form the valve seat during molding

and having aligned valve stem receiving openings on one of its face" – the definition NIBCO now asks the Court to adopt.   NIBCO's Motion for Reconsideration at 8.

In sum, the Court found that the term "valve disc replica" means "a close copy of the valve disc" and it did so with full awareness of its functions.  While the dictionary played a modest role in our conclusion, for the reasons stated above, we are of the firm belief that rather than undermining our earlier ruling, *Phillips* actually supports it.

## B.  Valve Stem Replica

NIBCO also asks the Court to reexamine its findings as to the meaning of "valve stem replica," which our earlier opinion defined as "a close copy of the valve stem."  Claim Construction Order at 10.  As we mentioned in our claim construction order, NIBCO originally contended in its claim construction brief that a "valve stem replica" should be interpreted as "any structure or combination of structures that simulate those aligned sections of the valve stem in the finished valve which pass through the bearings."  In its supplemental brief, however, NIBCO changed its mind and suggested the following construction:  "a structure that replicates a finished valve stem, and can be either one or two pieces."  In its Motion for Reconsideration, NIBCO sticks with the second proposed definition.  *See* Motion for Reconsideration at 11.

NIBCO principally argues that the specification never limits the valve stem replica to one piece.  But this argument was already addressed in the Court's claim construction opinion, and NIBCO does not explain how *Phillips* affects that analysis at all.  As we explained before, the definition "'a close copy of the valve stem' allows the possibility of a multiple piece valve stem. It would not be unreasonable for the jury to find that a two piece replica is a 'close copy' of the original.  There is no reason to stray from the plain meaning of the claim language, so 'valve

stem replica' means 'a close copy of the valve stem.'"  Claim Construction Order at 10.  NIBCO has not explained how *Phillips* changes any of that reasoning.

## CONCLUSION

For the reasons stated herein, NIBCO's Motion for Reconsideration [Doc. 131] is **DENIED**.

**SO ORDERED.**

ENTERED: September 26, 2005

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
